# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 97 C 6850 | **DATE** | 12/1/2000 |
| **CASE TITLE** | Industrial Enclosure Corp. vs. Northern Insurance Corp. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. For the reasons set forth on the attached order, plaintiff's motion for separate trials, plaintiff's 6th and 8th motions in limine, and defendant's motions in limine relating to James Mitidiero, the anticipated expansion plan, the vexatious delay claim, and the statutory interest claim (64-1,72-1,2, 74-1,79-1,85-1,86-1,87-1) are granted; plaintiff's 2nd and 12th motions in limine and defendant's motion in limine regarding belated identified witnesses (70-1,78-1,83-1) are granted in part and denied in part; and all remaining motions are denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | Document Number |
| | Notices mailed by judge's staff. | | DEC 8 2000 | |
| | Notified counsel by telephone. | | date docketed | 119 |
| ✓ | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | ED-7 FILED FOR DOCKETING | | |
| OR | courtroom deputy's initials | 00 DEC -7 PM 4: 02 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| INDUSTRIAL ENCLOSURE CORP., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 97 C 6850 |
| ) | |
| NORTHERN INSURANCE CORP. OF NEW ) | |
| YORK and MARYLAND CASUALTY CO., ) | |
| ) | |
| Defendants. ) | |

DO(

DEC 0 8 2000

MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

The purpose of this Memorandum Opinion and Order is to rule on the parties' motions *in limine*.

A. **Plaintiff's motions *in limine***

1. In plaintiff's first motion *in limine*, it argues that the Court should determine as a matter of law that defendant has waived the flood exclusion which forms the basis of its primary affirmative defense, because it paid claims for losses involving computers and valuable papers without asserting that exclusion. The motion is denied. The clear language of the Manufacturers Additional Coverage Endorsement, which contains the provisions extending coverage to losses involving computers and valuable papers, shows that the flood exclusion does not apply to coverages established by that endorsement. For this reason, the insurer's payment of such losses in no way constitutes a waiver of reliance on the flood exclusion.

2. Plaintiff's second motion *in limine*, seeking a determination that the insurance policy does not limit recovery for losses involving valuable papers to $75,000 and losses

involving computers to $50,000, is denied in part and granted in part. The "coverage" provisions of the basic insurance policy clearly excluded coverage for valuable papers. *See* Building and Personal Property Coverage Form, ¶A.2.n. The only such coverage is that provided by the MACE endorsement and the "Valuable Papers Declaration," which limited recovery to $75,000 altogether. The Court therefore concludes that valuable papers coverage is in fact limited to $75,000, and the motion is denied in that respect. With regard to computer equipment, defendant agrees that there is no dollar limit on coverage under the policy, *see* Dfdt. Resp. at 2 n.1, so in that respect the motion is granted.

3. Plaintiff's third motion *in limine* is denied.

In this motion, plaintiff argues that its recovery should not be limited to the actual cash value of its property at the time of the loss but rather should be based on replacement cost. The policy provided for replacement cost coverage but stated that the insurer "will not pay on a replacement cost basis for any loss or damage: (1) Until the lost or damaged property is actually repaired or replaced; and (2) Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage." *See* Pltf. Mot. at 2. Plaintiff contends that by denying coverage, defendant, as a matter of law, gave up its right to limit damages via this clause. The Court disagrees. In interpreting insurance policies, Illinois courts follow the rule that a party may not rely on a condition precedent when by its own conduct it made compliance with that condition impossible. *See State Farm Fire & Casualty Insurance Co. v. Miceli,* 164 Ill. App. 3d 874, 518 N.E.2d 357, 362 (1987); *LaSalle National Bank v. Massachusetts Bay Insurance Co.,* No. 90 C 2005, 1997 WL 211220, at *1 (N.D. Ill. Apr. 22, 1997) (Williams, J.). However, neither *Miceli* nor the other cases relied upon by plaintiff say that if an insurer denies liability on

2

a policy of this type, it *automatically* loses its right to object to recovery based on replacement cost. Rather, the issue is a question of fact to be answered by the jury: did the denial of coverage make it impossible for plaintiff to comply with the repair or replacement condition?

The Court likewise disagrees with defendant's argument that the rule that an insurer may not insist on a condition after making compliance impossible is limited to cases involving homeowners or cases in which the insurer's conduct is extreme or outrageous or showed a callous disregard for the insured's rights. The Court in *Miceli* simply applied to insurance contracts a basic and well-established principle of contract law which applies to all contracts; the Court sees no basis to alter this basic principle in the present context.

For these reasons, plaintiff's third motion *in limine* is denied.

4. Plaintiff's fourth motion *in limine* is denied. It appears that defendant's expert Gerald Robinson has developed further information to rebut anticipated attacks on his testimony. At oral argument on December 1, 2001, plaintiff represented that if it had had this information sooner, plaintiff would have taken Robinson's deposition. Rather than dealing with this matter by reference to the intricate interplay between Federal Rule of Civil Procedure 26(e)(1) (concerning supplementation of discovery disclosures), Rule 26(a)(3) (referenced in Rule 26(e)(1), and dealing with the timing of pretrial disclosures), and Rule 26(a)(2)(C) (dealing with "rebuttal" reports by experts), as well as the April 30, 2000 discovery cutoff date in this case, the Court believes that the fairer course is to permit Robinson to testify with regard to these matters but to permit plaintiff to take, on or before January 19, 2001, a three-hour deposition of Robinson concerning the matters referenced in the "supplement" to his earlier report produced on November 10, 2000.

3

5.     Plaintiff's fifth motion *in limine* is denied. It appears that prior to the discovery cutoff date, plaintiff's and defendants' attorneys agreed that the parties' respective accountants could be deposed after the cutoff date; it also appears that plaintiff's attorney was aware prior to that time that defendant had an accounting expert. Plaintiff then produced, on the last day of discovery (May 1, 2000), documents which materially altered its damage claim. The review by defendant's accountant of the revised claim was completed in early September and a schedule summarizing the accountant's conclusions was provided to plaintiff at that time. Plaintiff, however, took no steps to depose defendant's accountant. Defendant then updated and supplemented its accounting expert's disclosures on November 10, 2000, within the time provided by Fed. R. Civ. P. 26(e)(1) and 26(a)(3), after receiving further revisions in plaintiff's figures. Plaintiff may take a three-hour deposition of the accountant on or before January 19, 2001 if it wishes to do so, but its motion *in limine* to bar the accountant's testimony at trial is denied.

6.     Plaintiff's sixth motion *in limine,* concerning certain anticipated testimony by Mark Toral, is granted; the testimony is irrelevant. This is a breach of contract action the primary issue in which, it appears, will be whether and the extent to which the damage to plaintiff's property was caused by a flood. Evidence regarding discussions plaintiff had with Toral, plaintiff's insurance agent, about purchasing flood insurance has no bearing on this or any other issue involved in plaintiff's claim or any appropriate affirmative defense. Plaintiff's awareness of the risk of flooding and its decision not to purchase flood insurance likewise has no relevance to construction of the insurance policy issued by defendant. Finally, the fact that plaintiff could have purchased flood insurance and thus protected itself from the loss is irrelevant

4

to whether the insurance policy issued by defendant covered the loss.

7. Plaintiff's seventh motion *in limine,* to bar the testimony of Jim Wiethorn of Haag Engineering, is denied for the reasons stated in defendant's response.

8. Plaintiff's eighth motion *in limine,* to preclude the testimony of Richard Kragh, is granted. No report from Kragh pursuant to Fed. R. Civ. P. 26(a)(2)(B) was ever supplied by defendants. Kragh therefore may not testify as an expert or rebuttal expert at trial. However, he may testify as a non-expert fact witness to the extent his testimony is otherwise admissible.

9. Plaintiff's ninth motion *in limine,* which seeks to preclude Steve Wing from testifying, is denied. Wing is not listed by defendant as an expert witness. As a fact witness, his existence was sufficiently disclosed in defendants' supplemental answers to plaintiff's interrogatories, which were served on February 23, 2000.

10. Plaintiff's tenth motion *in limine,* to bar testimony by Curtis Ruppert, Dale Hurwitz, and David Schlott, is denied. These witnesses are not experts within the meaning of Fed. R. Civ. P. 26(a)(2)(B) but rather will testify regarding work they performed on behalf of defendant in estimating plaintiff's claimed losses. They are therefore roughly equivalent to treating physicians, who are not subject to the requirements of Rule 26(a)(2)(B) and may testify without providing an expert report so long as they are properly disclosed, as these witnesses were. With respect to the relevance of the testimony of these witnesses, the parties are already aware that plaintiff's claims for statutory interest and vexatious delay will not be tried to the jury, so testimony relevant only to those issues will not be admitted at trial.

11. Plaintiff's eleventh motion *in limine,* to preclude Kevin Keeley from testifying, is denied for the reasons stated in defendant's response.

12. Plaintiff's twelfth motion *in limine,* which seeks to preclude Steve Wing or others from attempting to interpret or construe the terms of the insurance policy, is granted in part and denied in part. Testimony concerning how the insurance policy should be construed does not bear on any issue to be decided by the jury, as both parties agree, and therefore will not be admitted. *See* Pltf. Mot. ¶1; Dfdt. Resp. ¶2. This does not, however, preclude testimony by a witness (such as a claims representative like Steven Wing) regarding why he did what he did – for example, why he denied a claim – even if his answer includes some implicit interpretation of the policy. Such testimony is relevant and not unfairly prejudicial. However, the Court reserves the right to limit the extent of such testimony pursuant to Fed. R. Evid. 403, and plaintiff may propose an appropriate limiting instruction to be read to the jury if such testimony is elicited.

13. Plaintiff's thirteenth motion *in limine* is denied. Evidence regarding changes in the elements of damages claimed by plaintiff is relevant with regard to the veracity and reasonableness of the claim. However, the parties have agreed that plaintiff's statutory interest claim should not be submitted to the jury, and thus evidence bearing only on that claim will not be admitted.

**B.     Defendant's motions *in limine***

1. Defendant's motion *in limine* concerning the testimony of James Mitidiero is granted. The fact that no report pursuant to Rule 26(a)(2)(B) was submitted with regard to Mitidiero is of no consequence; he is not a retained expert within the meaning of that Rule but rather stands in a position similar to that of a treating physician testifying about historical facts and observations and thus was not required to submit a report under Rule 26(a)(2)(B). The Court nonetheless grants defendant's motion, as Mitidiero was not disclosed in response to

6

interrogatories from defendants asking for identification of persons with knowledge of the facts and circumstances of the case and asking for identification of trial witnesses. The fact that plaintiff provided defendant with the documents underlying Mitidiero's proposed testimony is not enough to cure plaintiff's failure to identify Mitidiero in response to these unambiguous interrogatories.

2. Defendant's motion *in limine* concerning a sworn statement of Thomas Druse is denied. Druse's identity was disclosed before the discovery cutoff date and defendants elected not to depose him. The fact that plaintiff thereafter took a new statement from Druse is of no consequence; plaintiff's earlier disclosure in no way limited Druse's possible trial testimony to the matters contained in his pre-discovery-cutoff statements.

3. Defendant's motion *in limine* to bar testimony by Robert Callero regarding matters other than the lost income claim is denied for the reasons stated in plaintiff's response.

4. Defendant's motion *in limine* seeking to preclude plaintiff from introducing evidence regarding certain damage estimates is denied. Plaintiff does not intend to call an expert witness to confirm the estimates in question but rather represents that plaintiff's CEO, John Palmer, is competent to testify on these topics. The motion is denied subject to plaintiff laying a proper foundation at trial for Palmer's testimony.

5. Defendant's motion *in limine* to bar belatedly identified witnesses and information is granted in part and denied in part. Plaintiff cannot call Candelario Rivas, George Rayford, Bregail Whisenant, Maria Lozano, or Robin Peters at trial because they were not identified pursuant to interrogatories which unambiguously called for disclosure of persons with knowledge of relevant matters and persons to be called as witnesses. The fact that these persons

were referenced in a document produced by another witness is not sufficient disclosure in light of these clearly-worded interrogatories and plaintiff's answers to them. However, information from these witnesses may be relied upon by plaintiff's experts so long as it meets the requirements of Fed. R. Evid. 703, as amended effective December 1, 2000. It is conceivable that plaintiff's experts may be able to disclose to the jury the information from these witnesses, but only if and to the extent the information is otherwise admissible in evidence, or if and to the extent its probative value in assisting the jury to evaluate the experts' opinions substantially outweighs its prejudicial effect. *See* Fed. R. Evid. 703 (as amended effective 12/1/00). The Court will address that issue at trial if it is raised.

6. Defendant's motion *in limine* to bar plaintiff from utilizing material prepared by Randy Somersett is denied. In April 2000, plaintiff produced a rebuttal report from its engineering expert Matthew Worline in which Worline opined, among other things, that the water that inundated plaintiff's plant could have come from a particular sewer line (the Kendall line). The Court thereafter gave defendant permission to designate a rebuttal expert. *See* Order of June 6, 2000. That expert, from Haag Engineering, performed an inspection in July 2000; among other things, he conducted an examination of the Kendall line and concluded that it could not have contributed to the flooding within the building. After receiving the Haag report, plaintiff retained Somersett to video tape the Kendall line and another sewer line (the Dearborn line); he did so, and his tapes were ultimately used by Worline to prepare a "rebuttal" report, submitted in October 2000, in which he concluded that the Dearborn sewer line could have contributed to the flooding. Defendant seeks in this motion to preclude use of Somersett's report and in a different motion (*see* Paragraph 10 *infra*) to bar Worline from testifying to the matters in

8

his October 2000 report.

The Court likely would be within its discretion in precluding use of this material. However, for the reasons stated in open court on December 1, 2000, the Court believes that the fairer course is to allow plaintiff to use the Somerset material; authorize defendant to conduct its own examination and video taping of the sewer line now relied upon by Worline; require Haag to submit, by January 5, 2001, a supplement to his report with any additional opinions or conclusions that he develops after analyzing any such examinations; permit defendant to take a three-hour deposition of Worline based on his October 2000 report; and permit plaintiff to take a three-hour deposition of Haag based on the anticipated supplement to his report. The depositions must be completed by January 19, 2001. For these reasons, the motion *in limine* is denied.

7. Defendant has moved *in limine* to exclude evidence of lost income arising from plaintiff's alleged anticipated expansion program. Its first two arguments in support of the motion are without merit. The fact that plaintiff would base its claim of lost income in part on the alleged delay in its expansion plans caused by the flood damage was disclosed to defendant well before the close of discovery. And the nonexistence of documentary support for plaintiff's claim that it had expansion plans affects only the weight of its claim, not the admissibility of oral testimony supporting the claim.

Defendant fares better, however, with its argument that under the insurance policy, it is liable for only the loss of income due to suspension of operations during the "period of restoration," which the policy says comes to an end when the insured's property is repaired, rebuilt, or replaced with property of similar quality. *See* Business Income (and Extra Expense) Coverage Form, ¶¶A & G(3). Plaintiff's only response is an argument the Court has previously

9

rejected: that policy conditions concerning rebuilding or replacement are unenforceable as a matter of law when the insurer denies coverage. In its third motion *in limine,* plaintiff argued that defendant was not entitled to rely on a policy provision stating that the insurer must pay the replacement cost of damaged property only if the property was actually replaced within a reasonable time following the loss. Plaintiff claimed that when an insurer denies coverage, it gives up its right to rely on such provisions. The cases plaintiff cited, however, supported only a narrower proposition – that the insurer may not rely on the "actual replacement" condition if its denial of coverage actually made it impossible for the insured to comply with that condition. *See supra* at 2-3. Plaintiff has failed to provide any explanation for how this principle possibly could operate to eliminate the "period of restoration" provision of the business income coverage, and the Court cannot divine any such argument. The Court therefore concludes that plaintiff is not entitled to seek recovery for income that it believes it would have made from future expansion plans, to the extent that such lost income is attributable to the period beyond October 1, 1996. Defendant's motion *in limine* is granted to that extent.

8. Defendant's motion *in limine* seeking to preclude evidence relating to plaintiff's vexatious delay claim is granted. The Court has already ordered that claim severed for purposes of trial.

9. Defendant's motion *in limine* to preclude evidence relating to plaintiff's statutory interest claim is granted. The parties agree that this is an issue for the Court, not the jury.

10. Defendant's motion *in limine* to preclude plaintiff's expert Matthew Worline from testifying to matters included in his October 2000 "rebuttal" report is denied for the reasons stated in Paragraph 6 above.

11. Defendant's motion *in limine* to bar evidence of replacement value is denied for the reasons stated in the Court's discussion of plaintiff's third motion *in limine*. Based on the parties' submissions, the issue is one that must be determined by the jury. *See supra* at 2-3.

12. Defendant's motion *in limine* to bar the use of documents belatedly produced or not produced is denied as to plaintiff's exhibits 17-2 through 30-8, as the evidence reflects that these documents were produced within the time for discovery. The motion is also denied as to plaintiff's exhibits 31 through 33, as plaintiff has stated that it does not intend to offer these in evidence.

**Conclusion**

For the reasons stated above, plaintiff's motion for separate trials, plaintiff's sixth and eighth motions *in limine,* and defendant's motions *in limine* relating to James Mitidiero, the anticipated expansion plan, the vexatious delay claim, and the statutory interest claim [64-1, 72-1, 72-2, 74-1, 79-1, 85-1, 86-1, 87-1] are granted; plaintiff's second and twelfth motions *in limine* and defendant's motion *in limine* regarding belated identified witnesses [70-1, 78-1, 83-1] are granted in part and denied in part; and all remaining motions *in limine* [67-1, 68-1, 69-1, 71-1, 73-1, 75-1, 76-1, 77-1, 80-1, 81-1, 82-1, 84-1, 88-1, 89-1, 90-1] are denied.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: December 1, 2000

11